RECEIVED

DEC - 9 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Houston Specialty Insurance Company | Civil Action No. 13-02150 |
| versus | Judge Richard T. Haik, Sr. |
| Meadows West Condo Association, et al | Magistrate Judge C. Michael Hill |

## MEMORANDUM RULING

Before the Court are Cross Motions for Summary Judgment filed by plaintiff, Houston Specialty Insurance Company ("HSIC") [Rec. Doc. 26] and Meadows West Condo Association and the Meadows Apartment Owners Association, Inc. ("Meadows West") [Rec. Doc. 29], Meadows' Opposition to HSIC's Motion [Rec. Doc. 30] and HSIC's Opposition to Meadows West's Motion and Reply to Meadows West's Opposition [Rec. Doc. 38]. For the following reasons, HSIC's motion will be denied and Meadows West's cross motion will be granted.

### I. Background

This insurance disputes arises from Meadows West's claim under its HSIC insurance policy for property damage at the Meadows West Condominiums in Lafayette, Louisiana (the "Property"), resulting from a fire on December 26, 2012 that originated in the HVAC duct work of one of the units. HSIC insured the Property at the time of the fire through Policy No. MEAWES2012, effective July 6, 2012 through July 6, 2013 (the "Policy"). *R. 29, Exhs. A; A-1*.

The Property consists of 124 condominium units situated in 18 buildings. The fire damaged two units, 166 and 167, both located in one building. The remaining 17 buildings were undamaged. There is no dispute that HSIC paid the claim submitted by Meadows West related to damages to Units 166 and 167—$48,876.80 as replacement cost to repair the building damage and for lost business income. What is in dispute is Meadows West's claim for the costs associated with reconfiguring the duct work in units that were not damaged by

the December 26, 2012 fire. Meadows West contends there is coverage for those costs under the Policy's Ordinance or Law provision. HSIC filed this declaratory judgment action seeking a declaration that there is no such coverage under the Policy.

Following the December 26, 2013 fire, on January 7, 2013, an investigation of the fire was conducted by the Lafayette Fire Department.[1] The Fire Department's investigator, Alton Trahan, determined that the heat source for the fire was the HVAC system where the duct work would make a 90 degree bend in which combustible particles accumulated. In particular, Trahan found that the December 26, 2012 fire "originated in the subfloor at the top of the stairs" in Unit 167 and "traveled up a chase designed for the duct work of the HVAC system." *R. 26, Exh. 7, ¶ 15*. Trahan concluded that the heat source for the fire was the HVAC system, which was located in a closet beneath the landing deck area at the top of the stairs, and that the area of origin was identical to the five previous fires within the complex. *Id.* Trahan opined that "the layout of the duct work and/or the construction of the flex duct within that subfloor and the chase" contributed to the fires and that "[maintenance and housekeeping issues may also be a contributing factor." *Id.* at ¶ 16.

On January 17, 2013, Trahan advised Fire prevention Chief Forrest Chaisson of his findings and conclusions from the January 7 investigation at Meadows West unit # 167. Trahan indicated that while the investigations section was not initially involved in the subject fire incident, because they had "been involved in five other incidents involving this particular complex... January 17, 1997, May 14, 2002, January 28, 2005, January 7, 2006 and December 6, 2010 ... we decided to look into it." Chief Chaisson then advised Larry Manuel,

---

[1] The investigation members included: Alton Trahan—Lafayette Fire Department PIO Investigator; Larry Manuel, Chief Building Official—Planning, Zoning & Codes Department; Greg Wiltz—Chief Electrical Inspector; David Cloteaux—Chief Plumbing Inspector; Todd Hebert—Chief Mechanical Inspector; Chief Wilfred Schexnaider—Fire Inspector II; and Forrest Chaisson—Fire Prevention Chief.

the Chief Building Official, that "[g]iven the age of the buildings, I'm not sure whether it can be determined if this original design may have met code or not; if it did, it appears that it is faulty. I believe that it is incumbent upon both of us, as the building code and fire code official, to act upon these condition as we see fit despite the default that protects existing buildings. Therefore, I'm referring this unsafe condition to your office for a speedy resolution." *Id. at ¶ 18; Exh. 8.*

By certified mail dated January 18, 2013, Manuel informed Meadows West property manager, Marion Nevils, that the repair to remedy the unsafe condition must be drawn and designed by a mechanical engineer and submitted to his department for review and permitting. Manuel "suggested" that the flex duct be removed from the plenum and replaced with rigid metal duct work or that the HVAC units be relocated to the attics. He advised that if he did not hear from Nevils in two weeks, he would resort to legal action and get the State Fire Marshal involved. *R. 30, Exh. A-4.* Nevils responded by letter dated January 29, 2013 and advised that she was working with the Meadows West Board of Directors to obtain bids and address the problem as soon as possible. *Id. Exh. !-5.*

On April 12, 2013, Manuel stated in a second letter that, "[a]s the Local Building Official I am obligated to see that the hazards that have caused these fires are repaired and the problem resolved. I am authorized by law to do what I feel is necessary to resolve this problem under the International Building Code 2009 Edition, Section 116 which has been adopted by Lafayette Consolidated Government[2]..... Therefore, I am setting a deadline of September 22, 2013. After this date, I intend to have LUS turn off the power to all units that

---

[2] It is undisputed that Section 116 of the International Building Code 2009 Edition was adopted by Ordinance No. 0-232-2011.

3

have not yet been repaired...." *R. 26–2, ¶ 24; Exh. 11*.

Meadows West contracted with a Louisiana registered architect to design a rigid metal duct work layout and then contracted with a Louisiana licensed commercial contractor to perform the removal and installation in order to replace the flex duct work, per Manuel's "suggestion." *R. 30, Exh. A-6*. The proposed repair was reviewed and permitted by Manuel and the Lafayette Consolidated Government. The work was completed by the end of July, 2013 throughout all 18 buildings of the property for a cost of $316,489.10. An insurance claim for these costs was submitted to HSIC. By letter dated April 16, 2013, HSIC denied coverage for the costs to reconfigure the duct work not damaged in the fire. *R. 26-2, ¶ 25; Exh. 13*. The letter stated that "the Policy covers direct physical damage or loss to the Property." *Id.* It also stated that the Ordinance or Law provision of the Policy did not apply because "(1) there was no applicable ordinance or law at the time of loss regulating the repair or reconstruction of the duct work; and (2) to the extent Meadows asserts there is such an ordinance or law, Meadows failed to comply with the ordinance or law before the fire loss at issue." *Id.* Citing the Policy Exclusions, HSIC stated, "[e]ven if the reconfiguration of the duct work were to fall within the Ordinance or Law coverage, the coverage must be read in conjunction with the Policy's exclusions"—(1) Faulty or Defective or Inadequate Construction/Workmanship/Maintenance and (2) Governmental Action. *Id.*

## II. Summary Judgment Standard

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317,324 (1986). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir.2000).

Louisiana substantive law governs this insurance policy dispute, as the case is before the Court under diversity jurisdiction. *See* 28 U.S.C. § 1332; *Jesco Const. Corp. v. NationsBank Corp.*, 278 F.3d 444, 447 (5th Cir.2001) (citing *Erie R.R. Co. v.. Tompkins*, 304 U.S. 64 (1938)). Under Louisiana law, in an action under an insurance contract, the insured bears the burden to prove the existence of the policy and coverage. The insurer bears the burden to establish policy limits or exclusions. *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La.2002). An insurance policy's exclusionary provisions are strictly construed, and the burden to prove that a loss comes within an exclusion is on the insurer. *Williams v. SIF Consultants of Louisiana, Inc.*, 133 So.3d 707, 712 (La.App. 3 Cir.,2014)

5

*III. Analysis*

*1. Motion To Strike*

Also before the Court is HSIC's Objections and Motion To Strike Certain Portions of Marion Nevils' Affidavit contending that portions of the Affidavit are not based on "Personal Knowledge" and violate the "Best Evidence Rule." *R. 33.* The Court will first consider HSIC's motion to strike certain portions of Nevil's Affidavit, *R. 30-2, Exh. A*, moving to the Policy considerations thereafter.

A motion to strike an affidavit filed in support of, or in opposition to, a motion for summary judgment is governed by Rule 56(c)(4) of the Federal Rules of Civil Procedure. Rule 56(c)(4) provides:

> Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

While an affiant is not required to state specifically that the affidavit is based upon her personal knowledge, the affidavit must contain enough factual support for a court to determine that the averments were based upon the affiant's personal knowledge. *See Thomas v. Atmos Energy Corp.*, 223 Fed. App'x. 369, 374 (5th Cir.2007). If a district court determines that portions of an affidavit are inadmissible, it may disregard or strike the inadmissible portions without striking the entire affidavit. *See W.O. Akin v. Q–L Investments, Inc.*, 959 F.2d 521, 531 (5th Cir.1992). The Court has reviewed Nevil's Affidavit and will consider only those portions of the Affidavit that comply with Rule 56(c)(4).

*2. Ordinance or Law Policy Provision*

Meadows West asserts that the Policy's Ordinance or Law provision provides

coverage for the costs to remove and repair the undamaged duct work based on the provision's language, as follows:

**2. COVERED COSTS AND EXPENSES**

>   f.   **Ordinance or Law**: If a Covered Cause of Loss occurs to Covered Property, the Company will pay for:
>
>   > (1) **The loss to the undamaged portion of a covered building** caused by the enforcement of any ordinance or law that:
>   >
>   > > (a) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;
>   > >
>   > > (b) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the Insured Location; and
>   > >
>   > > (c) Is in force at the time of loss.

Meadows West contends that because it is undisputed that: (1) the fire on December 26, 2012 was a "Covered Cause of Loss;" (2) the 18 buildings of the Property were "Covered Property" under the HSIC Policy; and (3) Section 116 of the International Building Code 2009 Edition was adopted by the Lafayette Consolidated Government on September 22, 2011, by Ordinance O-232-2811, *R. 30-2, A-6*, there is coverage under the Policy's Ordinance or Law provision, subparagraph 2.f.(1), for the costs of reconfiguration of the undamaged duct work as required by Lafayette Consolidated Government.

Section 116 of the International Building Code 2009 Edition provides in pertinent part:

Unsafe Structures and Equipments

> **116.1 Conditions**. Structures or existing equipment that are or hereafter ... a fire hazard, or are otherwise dangerous to human life or the public welfare ... shall be deemed an unsafe condition. Unsafe structures shall be taken down and removed or made safe, as the building official deems necessary and as provided for in this section....
> 
> \*\*\*
> 
> **116.3 Notice**. If an unsafe condition is found, the building official shall serve on the

7

> owner, agent or person in control of the structure, a written notice that describes the condition deemed unsafe and specifies the required repairs or improvements to be made to abate the unsafe condition ... within a stipulated time. Such notice shall require the person thus notified to declare immediately to the building official acceptance or rejection of the terms of the order.
>
> ***
>
> **116.5 Restoration**. The structure or equipment determined to be unsafe by the building official is permitted to be restored to a safe condition. To the extent that repairs, alterations or additions are made ... such repairs, alterations, additions ... shall comply with the requirements of Section 105.2.2 and Chapter 34.

*Id.*

HSIC argues that the Ordinance or Law provision does not apply in this case because, at the time of the fire, there was no ordinance or law in force which met the requirements of the Policy's three part provision. HSIC further argues that Section 116 relates to the process and authority for a building official to address unsafe structures, and does not govern how such buildings should be repaired or constructed. HSIC cites Manuel's January 18, 2013 letter in support of its position that Manuel was not enforcing or seeking to enforce an actual ordinance or law requiring demolition and regulating repair. HSIC notes that in the letter Manuel "requested" that a Louisiana licensed contractor make the necessary repairs and stated that he could not design such a repair but made "suggestions" in that regard. HSIC further notes that neither Manuel nor Chaisson cited any ordinance or law Meadows West had to follow.

The record indicates that, in addition to Manuel's letter to Meadows West, through its manager, Nevils, dated January 18, 2013, Manuel also set a letter dated April 12, 2013 to Meadows West manager. While the January 18, 2013 letter informed Meadows West of the unsafe condition of the duct work and instructed that the repairs must be performed by certain licensed professionals, Manuel stated in the second letter that he was "authorized by law" to enforce Section 116 as adopted by Ordinance O-232-2811 ("Section 116/Ordinance

8

O-232-2811") and ordered that Meadows West complete the repairs he had set out in his January 18, 2013 letter by September 22, 2013, or he would have the power turned off to any unrepaired units at that time. Hence, Manuel's January 18, 2013 and April 12, 2013 letters met Section 116/Ordinance O-232-2811's requirement that "written notice that describes the condition deemed unsafe and specifies the required repairs or improvement to be made to abate the unsafe condition ... within a stipulated time."

Section 116/Ordinance O-232-2811 also states that "[u]nsafe structures shall be taken down and removed or made safe, <u>as the building official deems necessary</u>" and that such repairs "shall comply with the requirements of Section 105.2.2 and Chapter 34." Because Manuel deemed that it was necessary under Section 116/Ordinance O-232-2811 that the flex duct work in all buildings and units of the Property, including those undamaged by the fire, be removed and replaced under the direction of a Louisiana licensed architect and contractor, and mandated that Meadows West complete such repairs under the threat of closure, the Court finds that the first and second provisions of the Policy's Ordinance or Law provision, 2.f.(1)(a) & (b) were met. The Court further finds that because Section 116/Ordinance O-232-2811 was adopted by the Lafayette Consolidated Government in 2011, it was in force at the time of the December 26, 2012 fire as required under 2.f.(1)(c).

HSIC also argues that because subparagraph 2.f.(3) of the Policy's Ordinance or Law provision—"The increased cost to repair, rebuild, or construct the Covered Property"—provides that the most HSIC will pay for loss or damage is "the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damages property on the same site," the Policy requires a codified ordinance or law which specifies costs for demolition and regulating repair or construction. Subparagraph 2.f.(3), however, covers a separate and distinct claim from the claims which fall under 2.f.(1)—loss to undamaged

9

portion of covered building—and 2.f.(2)—cost to demolish and clear site of undamaged parts of covered building. Indeed, 2.f.(3) covers replacements costs of the entire covered building.

HSIC next asserts that the Ordinance or Law coverage is excluded because Meadows West failed to comply with any ordinance or law before the December 26, 2012 fire loss, as provided under subparagraph 2.f.(4). Subparagraph 2.f.(4) of the Policy provides that the Ordinance or Law coverage does not apply to "[a]ny loss due to the insured's failure to comply with any ordinance or law that the Insured was required to comply with before the loss, even if the Covered Property was undamaged...." HSIC contends that because Meadows West was apprised of unsafe conditions by the Lafayette Consolidated Government in 2011, after the December 6, 2010 fire, and given suggestions as to how to reconfigure the duct work at that time, it was in violation of an ordinance or law before the December 26, 2012 loss.

After the December 6, 2010 fire, on February 2, 1011, Trahan, the Fire Investigator, submitted correspondence to Meadows West. While Trahan stated that "the installation of the duct work as well as the deposit of debris may be a contributing factor of the fire," he found that "the fire was accidental." *R. 26, Exh. 15*. The determination that the HVAC system was "unsafe" and subject to removal and repair under Section 116 was not made until the investigation of the fire on January 7, 2013. Moreover, the Lafayette Consolidated Government did not adopt Section 116/Ordinance O-232-2811 until after the December 6, 2010 fire, and no ordinance or law was cited in Trahan's letter nor has HSIC identified any ordinance or law which was violated at that time.

### *3. The Faulty, Inadequate or Defective Exclusion*

HSIC finally asserts that even if the Ordinance or Law provision applies, it is subject to the Policy exclusion for faulty, inadequate or defective design, specification,

workmanship, repair, construction, materials or maintenance. The exclusion states in pertinent part:

> 3. The Company will not pay for loss or damage caused by or resulting from any of the following:
>
> \*\*\*
>
> c. Faulty, inadequate or defective:
>
> \*\*\*
>
> (2) Design, specifications, workmanship, repair, construction ...;
>
> (3) Materials used in repair, construction, renovation or remodeling; or
>
> (4) Maintenance;
>
> of part or all of any property on or off an insured premises.
>
> However, in the event of an excluded cause of loss that is listed in 3.c.(1) through 3.c.(4) above results in a Covered Cause of Loss, this exclusion does not apply to loss or damage caused by that resulting Covered Cause of Loss. But, the Company will not be liable for:
>
> (a) Any cost of correcting or making good the fault, inadequacy or defect itself...; or
>
> (b) any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect...; or
>
> (c) Any resulting loss or damage by a Covered Cause of Loss to the property that was the fault, inadequacy or defect until the fault, inadequacy or defect is corrected.

The Policy does not further define any of the terms used in the exclusion. The Louisiana Fifth Circuit Court of Appeal has considered a similar exclusion and observed that, "The insurer by this exclusion intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured of someone authorized by him." *Husband v. Lafayette Ins. Co.*, 635 So.2d 309, 311 (La.App. 5 Cir.1994).

HSIC contends that the layout of the flex duct work in Meadows West's HVAC system was a defective design and the maintenance of the flex duct work was also defective.

HSIC cites the January 17, 2013 e-mail from Trahan to Chaisson and the January 18, 2013 letter from Manuel to Nevils, the manager of Meadows West, in support of its contention that "the Lafayette Consolidated Government clearly determined that faulty, inadequate or defective design, specification, workmanship, construction, materials and/or maintenance resulted in the fire of December 26, 2012 and that coverage under the Policy is excluded." *R. 26, Exhs. 7; 9.*

HSIC's reliance on the correspondence from Trahan, Chaisson and Manuel in asserting that Meadow West's duct work system was defective is misplaced. Language in the correspondence from these individuals such as, "[t]he heat source for the fire(s) appear to be the HVAC system;" "[t]he fire is most likely originating in this area;" "[i]t is my opinion that the layout of the duct work and/or the construction of the flex duct... is contributing to the fire;" "[m]aintenance and housekeeping issues may also be a contributing factor;" "'flexduct' and crimped and dips with sharp angle in this duct is the likely problem," demonstrates that the City-Parish officials' opinions were limited to the cause of the fires as opposed to design, construction and/or maintenance issues. *R. 26-5, Exhs. 7, 8, 9; R. 30-2, Exhs. A-2, A-3, A-4.* Most telling is the January 18, 2013 letter in which Manuel stated "I cannot design a repair," and then directed Meadows West to "hire a state of Louisiana licensed commercial contractor to make necessary repairs" and for "the repair to be drawn & designed by a mechanical engineer." *Id. at A-4.*

HSIC has provided no evidence demonstrating that either Trahan, Chaisson or Manuel was qualified to make any determination as to whether the "design, specification, workmanship, construction, materials and/or maintenance" of the HVAC system at issue was defective, faulty or inadequate. Nor has HSIC provided any evidence that the design or construction of the HVAC and/or duct work was defective when the apartments were

constructed in the 1970s. Accordingly, HSIC's motion with regard to the exclusion is issue must be denied.

*Conclusion*

Based on the foregoing, the Court will grant Meadows West's Motion For Summary Judgment, finding that the Ordinance or Law provision in the Policy provides coverage for repair of the undamaged duct work system, and will deny HSIC's Motion For Summary Judgment as HSIC has failed to meet its burden of proving that the Policy's Faulty, Inadequate or Defective Exclusion applies in this case.

_____
Richard T. Haik, Sr.